UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUSSELL LEWIS,

                     Plaintiff,                        05-CV-6335T

v.                                                  **DECISION**
                                                    **and ORDER**

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

## INTRODUCTION

Plaintiff, Russell Lewis,("plaintiff" or "Lewis"), filed this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("the Act"). Jurisdiction to review the Commissioner's decision arises under 42 U.S.C. § 405(g). On December 7, 2005, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the plaintiff moved for judgment on the pleadings. On February 16, 2006, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff is not eligible for DIB or SSI.

For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the defendant's motion for judgment on the pleadings is granted.

PROCEDURAL HISTORY

The plaintiff filed this application for DIB and SSI on June 18, 2003, alleging his disability since August 3, 2002, due to depression and bipolar disorder. (T. 35, 43, 57)[1]. The plaintiff's application for DIB and SSI were denied on October 7, 2003 (T. 29-34, 231-32). On August 2, 2004, a hearing was held before Administrative Law Judge ("ALJ") Harry H. Barr at which the plaintiff appeared with counsel and testified. (T. 235-55). On January 20, 2005, the ALJ considering the case *de novo* found that the plaintiff was not disabled because his impairments although severe did not meet one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (T. 15-26). On May 27, 2005, the ALJ'S decision became the final decision of the Commissioner when the Appeals Council denied the plaintiff's request for review. (T. 4-6). Thereafter, the plaintiff timely filed this civil appeal.

BACKGROUND

A. Non-Medical Evidence and Hearing Testimony

The plaintiff is a 43 year old man with a high school education. (T. 43, 62). He has not worked since August 3, 2002 alleging depression and bipolar disorder. (T. 35, 43, 57). He has been employed as a construction worker, road work paver, and stock

---

[1]     All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, *inter alia*, plaintiff's medical records, a transcript of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff DIB and SSI.

person. (T. 58-9). The plaintiff stated that these positions required him to work with other people and to supervise up to eight people. Id. The plaintiff has reported that he takes care of his personal needs, does household chores, shops for groceries by himself, prepares his own meals, washes clothes at the public laundromat, watches television, and take walks. (T. 71-74). He stated that he sleeps 12-14 hours a day and that his medication causes memory problems. (T. 246). The plaintiff also stated that he goes out once a week but cannot drive because he had his license revoked due to a felony conviction for driving while intoxicated. (T. 73-4). He stated that he gave up hunting, fishing, hiking, and camping. (T. 74). The plaintiff reported that he can follow spoken and written instructions and can manage a savings and checking account. (T. 74-76). However, the plaintiff has stated that he cannot stay focused or complete what he starts, has trouble remembering things, and has difficulty getting along with co-workers and bosses. (T. 76-77). He maintains that he lives in isolation and describes himself as a recluse.(T. 75).

During the plaintiff's hearing, the ALJ called David Festa, M.A. ("Festa") an impartial vocational expert to testify. (T. 249). Considering an individual with the plaintiff's vocational factors and residual functional capacity ("RFC"), Festa concluded that there are significant numbers of jobs in the national, state, and local economy that an individual like the plaintiff could perform. (T. 250-54). Furthermore, Festa testified that examples of jobs

that fulfill these hypothetical requirements include cleaner, electrode cleaner, and bakery racker. (T. 250).

    B. <u>Medical Evidence</u>

On March 31, 2000, the plaintiff was admitted to St. Joseph's Hospital after threatening to commit suicide with a loaded shotgun. (T. 214-220). Dr. Nedelcu treated the plaintiff and he remained a patient for 13 days after being diagnosed with depression and substance abuse. <u>Id.</u> He was prescribed Celexa and BuSupar and directed to follow up with outpatient therapy. <u>Id.</u>

In May of 2000, the plaintiff was admitted to St. Joseph's Hospital for ten days after taking an overdose of sleeping pills. (T. 90-91). Dr. Keller diagnosed the plaintiff with alcohol abuse, depressive disorder and personality disorder. <u>Id.</u>

In March of 2002, the plaintiff successfully completed a program at The Alcohol and Drug Rehabilitation Clinic. (T. 200).

On August 6, 2002, the plaintiff was seen by Dr. Rao. at St. James Mercy Hospital after complaining of overwhelming feelings of stress.(T. 100-01). He had drank a substantial amount of beer after arguing with his girlfriend and had a probable black out. <u>Id.</u> The plaintiff denied this was another suicide attempt. <u>Id.</u> He denied any suicidal thoughts or plans, and displayed no evidence of psychosis, delusions and hallucinations. (T. 100-01). He was kept overnight, then released and diagnosed with alcohol abuse and adjustment disorder with depressed mood. <u>Id.</u> It was strongly

recommended that the plaintiff commence alcohol counseling and attend outpatient counseling. Id.

In January 2003, the Family Services of Chemung County evaluated the plaintiff. (T. 150-55). The diagnosis was major depression, recurrent. Id. It was recommended that the plaintiff seek treatment from Joel Geller, a therapist, but he refused. Id.

In spring of 2003, the plaintiff's treating physician referred him to Family Services of Chemung County. In June of 2003, the plaintiff was seen there and diagnosed as having major depressive disorder, recurrent. (T. 110-15).

On June 26, 2003, the plaintiff saw Joel Geller ("Therapist Geller"). Therapist Geller noted that the plaintiff demonstrated intact and recent and remote memory. (T. 143).

Therapist Geller counseled the plaintiff on several occasions in 2003 and 2004. On every visit, except one, the plaintiff denied any suicidal and homicidal thoughts, delusions, or hallucinations, and displayed fair or improved insight and judgment. (T. 136-139, 141-144, 163-166). In addition, the plaintiff failed to appear for his appointments on August 13 and October 9, 2003, and April 22, May 6, and May 25, 2004. (T. 137, 141-142).

On July 22, 2003, the plaintiff reported to Therapist Geller of drinking alcohol on the prior day which he misreported was his first drink since 2001. (T. 144).

On July 29, 2003, the plaintiff was seen by, Dr. Chun, a psychiatrist at the Family Services of Chemung County. (T. 106-

5

109). He noted that the plaintiff had no recurrent depression, no paranoid thoughts and no delusional disorder. Id. He further stated that the plaintiff demonstrated intellectual functioning, adequate communication skills and speech content, and intact short and long term memory. Id. He diagnosed the plaintiff with depression and mood disorder. Id. He recommended doubling the plaintiff's Effexor XR to 300 mgs. (T. 106-09).

After missing a schedule appointment, the plaintiff on August 29, 2003, saw Dr. Chun complaining that his condition was no better. (T. 105). He noted that the plaintiff had been prescribed other medication in the past for depression but had not been compliant. Id.

On October 2, 2003, Dr. Harding, an agency physician provided a medical source statement regarding the plaintiff's mental capabilities. (T. 120-33). He found that the plaintiff had mild restrictions in activities of daily living, and moderate limitations in maintaining social functioning and concentration, persistence, or pace. Id.

On February 10, 2004, the plaintiff reported to Therapist Geller that he had occasional suicidal thoughts. (T. 139). He denied any homicidal thoughts. Id.

On February 26, 2004, the plaintiff saw Dr. Chun. (T. 157). Dr. Chun recommended increasing the plaintiff's Celexa and continuing Provigil. Id.

On March 2, 2004, the plaintiff reported to Therapist Geller that he had been playing pool and spending time at the library at the Social Connections. (T. 138).

On June 3, 2004, the plaintiff again saw Dr. Chun complaining of poor memory, panic attacks, and anxiety. (T. 156). Dr. Chun recommended phasing out Celexa, discontinuing Provigil and starting the plaintiff on Klonopin. (T. 156).

On June 20, 2004, the plaintiff was admitted to St. Joseph's hospital after a drug overdose. (T. 184-185). After arguing with his girlfriend, the plaintiff drank heavily and then took an overdose of Provigil and Klonopin. Id. Findings on physical and neurological examinations were all normal. (T. 184-5). The plaintiff described suicidal feelings, but denied hallucinations. Id. He was oriented as to time and place and demonstrated good immediate memory and mildly decreased recall memory. Id.

On June 26, 2004, the plaintiff was referred to the Behavioral Science Unit at St. Joseph's Hospital and remained there until July 2, 2004.  (T. 168-171). He was treated by Dr. Nedelcru. (T. 172-175). The doctor reported that the plaintiff denied suicidal ideations, hallucinations, paranoid thoughts, or persecutory paranoid thoughts. Id. He was diagnosed with alcohol abuse and depression. Id. He was placed on Naltrexone, Effexor, and Abilify and was advised to see Dr. Chun and an alcohol and drug rehabilitation clinic. Id.

On July 16, 2004, Dr. Chun completed a work assessment form that found the plaintiff had slight limitations in his ability to understand, remember, and carry out short, simple instructions, but that the plaintiff could not handle work pressure or work changes. (T. 161-62).

On July 29, 2004, Therapist Geller filled out a work assessment form that found the plaintiff to be unable to deal with co-workers, supervisors or the public. He also reported that the plaintiff had no capacity to behave in a predictable and reliable manner. (T. 163-166).

<u>LEGAL STANDARD</u>

A. <u>Jurisdiction and Scope of Review</u>

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).

    B. Legal Standards

    Plaintiff maintains that he is entitled to DIB and eligible
for SSI benefits as provided in Title II and XVI of the Act. See 42
U.S.C. §§ 423(d), 1382(a)(3). To be entitled to DIB, a claimant
must meet the insured status requirements of 42 U.S.C. § 423 (c).
To be eligible for SSI benefits, a claimant must meet the income
and resource limitations of 42 U.S.C. §§ 1382a, 1382b. Under either
statute, however, a claimant must demonstrate the inability to
engage in a substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than twelve months. 42 U.S.C. §§
423(d)(1)(A), 1382c(a)(3)(A).

    Furthermore, a claimant is disabled only if his impairments
are of such severity that he is not only unable to do his previous
work but cannot, considering his age, education, and work
experience, engage in any other kind of substantial gainful work
which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),
1382c(a)(3)(B); see 20 C.F.R. §§ 404.1520, 416.920, Williams v.
Apfel, 204 F.3d 48, 48-49 (2d Cir. 1999).

    In evaluating disability claims, the Commissioner instructs
adjudicators to follow the five step process promulgated in
20 C.F.R. § 416.920.  First, the Commissioner must determine
whether the claimant is engaged in any substantial gainful
activity.  Second, if the claimant is not so engaged, the

9

Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.  If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## DISCUSSION

Here, the ALJ properly followed the five step procedure.  The ALJ found that the plaintiff: (1) had not engaged in substantial gainful employment at any time since his alleged disability onset date of August 3, 2002; (2) suffered from a history of alcohol abuse and depression which constituted severe impairments; (3) did not have an impairment meeting or medically equivalent to one of the listed impairments in Appendix 1 of the C.F.R, Part 404, Subpart P; and (4) could perform simple tasks and follow simple instructions with few and infrequent changes, have occasional interaction with peers and supervisors, and no public interaction.

10

Lastly, the ALJ proceeded to the fifth and final step of the sequential evaluation process by using medical-vocational rule 201.25 set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids") as a framework for decision-making and also relied on vocational expert testimony to find that there were a significant number of jobs in the national, state and local economy which the plaintiff could perform such as a cleaner, electrode cleaner, and bakery racker.(T. 15-22).

The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff contends that although the ALJ followed the five step procedure, he improperly concluded that there is work in the economy which the plaintiff can do given his age, education, work experience and restrictions. (T. 15-22). Specifically, the plaintiff argues that the ALJ erred when he: 1) improperly rejected the opinions of the treating sources; 2) created a distorted picture of daily activities; 3) afforded too much weight to the agency's physician's opinion; and 4) improperly substituted his own medical opinion. Therefore, the plaintiff argues that because the ALJ erred, his claim should be remanded to the Commissioner for the calculation and payment of benefits. This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled.

The ALJ did consider the opinion of the plaintiff's treating physician Dr. Chun. However, an ALJ will give controlling weight to opinions from treating sources only if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with any other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

Here, it was reasonable for the ALJ to give little evidentiary weight to Dr. Chun because his opinion was not consistent with his findings as well as the reports of other examining physicians. Dr. Chun reported that the plaintiff had "no recurrent depression...no paranoid thoughts...no delusional disorder" and found that he had average intellectual functioning, adequate communication skills and speech content, and intact long and short term memory. (T. 108). However, Dr. Chun opined that the plaintiff had extreme and marked limitations in the ability to understand, remember, and carry out detailed instructions, and to respond appropriately to supervision, co-workers, and work pressures in a work setting. (T. 161-62). Furthermore, other physicians made similar findings. Dr. Rao reported that the plaintiff denied any suicidal thoughts or plans, and displayed no evidence of psychosis, delusions, or hallucinations. (T. 100-01). Dr. Nedelcu reported that the plaintiff denied any suicidal ideations, hallucinations, paranoid thoughts, or persecutory paranoid thoughts. (T. 174). Thus, it was reasonable for the ALJ not to accept Dr. Chun's assessment to the extent that it reflected significant limitations.

Furthermore, a social worker, such as Therapist Geller, is not an acceptable medical source under the regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Although social workers cannot provide medical opinions, the Commissioner may accord weight to a social worker's opinion on the severity of the impairment and how it might affect a claimant's ability to work. 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3). Thus, the discretion to determine the appropriate weight to accord the social worker's opinion is subject to the ALJ's discretion.

The plaintiff also maintains that the ALJ created a distorted picture of daily activities. While the ALJ erred by using the term "testified," by offering his opinion in a written questionnaire the plaintiff did state in his report that he had no difficulty caring for his personal needs, including preparing meals, feeding himself, washing clothes at a public laundromat, and shopping for groceries. (T. 70-77). Therefore, although the plaintiff did not "testify" in the clinical sense, he did offer testimony vis-a-vis his written questionnaire which was properly considered by the ALJ. The plaintiff also stated that he traveled unassisted and enjoyed going to the Social Connection where he played pool and spent time reading in the library. (T. 73, 137-38).

Moreover, the ALJ reasonably concluded that the plaintiff's testimony regarding his limitations was not credible. It is well within the discretion of the adjudicator to evaluate the credibility of the plaintiff's testimony and render an independent

13

judgment in light of the medical and other evidence regarding the true extent of such symptomology. Mimms v. Secretary of Health and Human Services, 750 F.2d 180, 186 (2d Cir. 1984). Here, the plaintiff was non-compliant with his medication, failed to appear for several scheduled appointments, and stated that he had been sober since 2001 when the record show he was intoxicated in 2002 and 2004. (T. 100, 105, 137, 141-42, 158, 160, 184). In addition, any suicide attempt by the plaintiff occurred when he was heavily intoxicated. (T. 19). Moreover, although the plaintiff claims he suffers from bipolar disorder, no diagnosis of bipolar disorder exists in the record. (T. 100-213). Thus, the ALJ reasonably concluded that the objective evidence of the record did not substantiate the plaintiff's claim of disability to the extent he alleged and his credibility was questionable.

The plaintiff also maintains that the ALJ afforded too much weight to the state agency physician. However, the Second Circuit has recognized that the Commissioner is entitled to rely on the opinions of non-examining sources, provided that they are supported by evidence in the record. See Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995); Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). Here, the state agency physician, Dr. Harding found that the plaintiff was only moderately limited in some areas of sustained concentrations and persistence and social interaction, but otherwise demonstrated no evidence of limitation in all other areas of mental functioning all of which is supported by evidence in the

record. (T. 116-17). Thus, the ALJ was within his discretion to give weight to Dr. Harding's opinion.

Finally, the ALJ did not substitute his own medical "opinion" for that of the physicians in the record. He based his decision on several doctors' opinions and the testimony of the vocational expert who concluded that the plaintiff if limited, could return to work as a cleaner, electrode cleaner or bakery racker. Thus, I find that the ALJ did not err, but properly evaluated the plaintiff's ability to perform and gave it the weight within his discretion he felt was appropriate together with other evidence provided.

Therefore, I find that the ALJ's conclusion is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions reached by ALJ Barr.

<u>CONCLUSION</u>

For the reasons set forth above, I do find substantial evidence in the record to support the ALJ's conclusion that the plaintiff is not eligible for DIB or SSI.   Accordingly, the Commissioner's motion for judgment on the pleadings is granted.


ALL OF THE ABOVE IS SO ORDERED.


S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           June 7, 2006

15